SUSPENSION OF COLLEGE SESSION The Board of Regents of Agricultural and Mechanical Colleges is under a duty and an obligation to operate and maintain the institution during the current fiscal year ending June 30, 1975, for which funds have been provided and accordingly is without authority, statutorily or otherwise, to cease or interrupt scheduled operations during the summer within such fiscal year. This is to acknowledge receipt of your opinion request wherein you ask, in effect, the following questions: (1) Does the Board of Regents for Oklahoma Agricultural and Mechanical Colleges have the authority to suspend an announced session of a college under its jurisdiction? (2) If the answer to the first question is in the affirmative, must such closing be approved by the Oklahoma State Regents of Higher Education? In considering your first question of whether the Board of Regents for Agricultural and Mechanical Schools and Colleges has the authority to suspend a summer school session of a university, it is necessary to set out certain relevant constitutional and statutory provisions. The Board of Regents for Oklahoma Agricultural and Mechanical Schools, hereinafter referred to as the Board of Regents, was created pursuant to Article VI, Section 31(a) of the Oklahoma Constitution, which reads in part as follows: "There is hereby created a Board of Regents for the Oklahoma Agricultural and Mechanical College and all agricultural and mechanical schools and colleges maintained in whole or in part by the State. . . ." Specific statutory powers and duties of the Board of Regents are contained in the provisions of 70 O.S. 3412 [70-3412] (1971), which states as follows: "3412. Board of Regents for Oklahoma Agricultural and Mechanical Colleges — State educational institutions, jurisdiction of — Powers and duties — Institution personnel — Fidelity bonds — Federal funds — Gifts — Contracts — Property — Employee benefits. — The Board of Regents for Oklahoma Agricultural and Mechanical Colleges shall have the supervision, management and control of Oklahoma State University of Agricultural and Applied Science, Panhandle Agricultural and Mechanical College, Langston University, Cameron State Agricultural College, Connors State Agriculture College, Eastern Oklahoma Agricultural and Mechanical College, Murray State Agricultural College, and Northeastern Oklahoma Agricultural and Mechanical College; and shall have the following additional powers and duties: "(a) Adopt such rules and regulations as it deems necessary to govern each of the institutions under its jurisdiction. "(b) Employ and fix the compensation and duties of such personnel as it deems necessary, including architects, attorneys, engineers, and other professional and technical persons deemed necessary by the Board, for its operation and for the operation of the institutions under its jurisdiction. Any of such personnel having custody of public funds or other public property may be required to furnish corporate surety bonds in such amounts as may be deemed necessary by the Board, payable to the State of Oklahoma and conditioned upon a faithful accounting of all such funds and property. "(c) Enter into contracts, purchase supplies, materials and equipment, and incur such other expenses as may be necessary to make any of its powers effective. "(d) Authorize officials at the several institutions under its jurisdiction to act in its behalf in the making of contracts, or in carrying out the powers conferred upon it. "(e) Receive and make disposition of moneys, grants and property from Federal Agencies, and administer the same in accordance with Federal requirements. "(f) Accept gifts of real and personal property, money and other things, and use or dispose of the same in accordance with the directions of the donors or grantors thereof. "(g) Direct the disposition of all moneys appropriated by the Legislature or by the Congress or derived from the sale of bonds or received from any other source by institutions under its jurisdiction. "(h) Acquire and take title to real and personal property in its name, on behalf of any of the institutions under its jurisdiction, and convey, exchange or dispose of, or otherwise manage or control, such property in the interest of such institutions, including the granting of upon any such real property. The Board shall have the power to institute any legal action in the name of the Board before any court having jurisdiction of such actions. The Board shall have the custody and control of abstracts of title and instruments affecting the ownership of or title to real property belonging to the Board, and being held by the Board on behalf of a particular State Educational Institution. "(i) Have supervision and charge of the construction of all buildings at the institutions under its jurisdiction. "(j) Determine the need for and cause to be constructed, dormitories and other buildings, on a self-liquidating basis, at any institution under its jurisdiction. "(k) Establish and maintain plans for tenure and retirement of employees of the Board and of the institutions under its jurisdiction, and for payment of deferred compensation of such employees; and provide hospital and medical benefits, accident, health and life insurance, and annuity contracts, for such employees and their dependents. The Board may pay for all or a part of the cost for employees thereof with funds available for the operation of the institution. Amounts payable by an employee for such insurance or annuity contracts may, with the consent of the employee, be deducted from his salary. "(l) The said Board shall cause a complete inventory to be made of all properties belonging to each of the said agricultural colleges or universities within the State of Oklahoma before the last Monday in December, next preceding each biennial session of the State Legislature, and accompanying said inventories shall be a financial statement showing in detail the condition of all funds appropriated for the use of said agricultural colleges and experimental stations, also the money expended and the purposes for which the same were expended and the condition of the institution; and, the results of experiments carried on, together with the* recommendations concerning remedial legislation or regulations for the betterment of said institution. A copy of said inventories and reports shall be filed, one with the Governor, one with the Secretary of State and sufficient copies for the members of the Legislature. "(m) The said board shall audit all accounts against the funds appropriated for the use and maintenance of the Oklahoma State University of Agriculture and Applied Science and the other State agricultural colleges, including experimental stations, and the State Auditor shall issue his warrant upon the State Treasurer for the amount of all accounts, including salaries and expenses. "(n) Provide penalties and forfeitures by way of damages and otherwise for the violation of rules and regulations of the Board, which may be sued for and collected in the name of the Board before any court having jurisdiction of such actions. "(o) The Legislature, further recognizes and confirms, that the Oklahoma State University of Agriculture and Applied Science is an institution corporate under the constitution and statutes of Oklahoma with full power and authority, acting through its constitutional Board of Regents, to do all things necessary or convenient to accomplish the corporate objects of said institution, and said institution, acting through its constitutional Board of Regents, is hereby recognized to be such public corporation and to have such powers. "Without limiting the generality of the foregoing, the powers of said board of regents to control and use moneys accruing to the institutions under their jurisdiction and control, from nontax sources, including institutional earnings, and proceeds of sales of surplus properties heretofore authorized to be sold, and revenues derived by way of bonuses and rentals from oil and gas leases, for any lawful institutional purpose, is hereby specifically confirmed. "The enumeration herein of certain powers and immunities of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges shall not be construed as in derogation or as a limitation of other powers and immunities properly belonging to said Board by virtue of any provisions of the Constitution of Oklahoma or of any provision of law. Said Board, is hereby, expressly granted every power necessary or convenient to make institutions under its jurisdiction effective for the purposes for which they were created and are maintained and operated. "Nothing in this section shall be construed as in derogation of the constitutional powers and responsibilities of said Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting as the Board of Regents for Cameron State Agricultural College, Connors State Agricultural College, Eastern Oklahoma Agricultural and Mechanical College, Murray State Agricultural College, Northeastern Oklahoma Agricultural and Mechanical College, Panhandle Agricultural and Mechanical College, and Langston University. Laws 1965, c. 395, 412." Taking into consideration the above powers and duties of the Board of Regents, this office has previously answered a similar question of purport and effect in Opinion No. 74-230. It was contained therein the following: "As to your fifth question, our response to your first two questions compels the conclusion that the Board of Regents is obligated to continue to operate and maintain such institution during the current fiscal year. The fact that actions have been taken in the past to seriously impair the financial condition of the institution does not provide a basis for taking the drastic action, without statutory authorization, of closing operations when current funds are available to continue to operate." Thus, we reaffirm the principle that where moneys are appropriated by the Legislature and allocated to an institution of higher education by the State Regents, it is the duty of the governing board to expend the available funds and carry out the educational program as was contemplated by the appropriation and subsequent allocation of funds. Also, pertinent and related to your question are the matters of appropriations and allocations of funds. In making the general appropriation to the State Regents in consolidated form, and any subsequent supplemental appropriations, the Legislature appropriated funds for the current fiscal year that are subject to fiscal year limitations. Such funds must be encumbered before July 1, 1975. Any unexpended funds remaining after November 15, 1975, shall then lapse and revert to the general fund of the State Treasury. Accordingly, under the state system of finance and the circumscribed checks and balances of the system, it must be presumed that such monies are sufficiently available for maintaining and operating such institution for the fiscal year ending June 30, 1975. We next assume that subsequent appropriation and allocation shall be forthcoming to such institution commencing July 1, 1975, for educational and general purposes, as in the case of other institutions that make up the state educational system of higher education. Thus, the Board of Regents of AM Colleges have no authority to close an institution under its jurisdiction or to "suspend" a summer session of an institution during any fiscal year for which funds have been provided. Any such actions by the Board would be exercising a function outside of the scope of authority and powers of such Board and would be void ab initio under our previous Opinion No. 74-230, supra. It is, therefore, the opinion of the Attorney General that your first question be answered in the negative. The Board of Regents of Agricultural and Mechanical Colleges is under a duty and an obligation to operate and maintain the institution during the current fiscal year ending June 30, 1975, for which funds have been provided, and accordingly is without authority, statutorily or otherwise, to cease or interrupt scheduled operations during the summer term within such fiscal year. The answer to your first question being in the negative, it is not necessary to answer your second question. (Gerald E. Weis)